JULIUS J. COHEN vs. KATE LEVY & another.

Suffolk.    March 3, 4, 1915. — May 24, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice*, Parties, Appeal, Decree.    *Fraud*, As against creditors.

Upon the granting of a motion made by the plaintiff in a suit in equity that a certain person be joined as a party defendant, such person does not become a defendant until he has been served with a subpoena or has appeared voluntarily.

In a suit in equity against two defendants to reach and apply in payment of a debt, owed to the plaintiff by one of the defendants, property conveyed by that defendant in fraud of his creditors to the other defendant, on an appeal by the defendants from a final decree which directs that persons who are not parties to the suit shall deliver certain property to the plaintiff, the decree must be reversed.

It here *was stated* as a recognized rule, that, in order that a transfer of
property by a debtor to a purchaser for value but in fraud of creditors of
the seller should be voidable by such creditors, the purchaser must actually
have known of or have participated in the fraudulent purpose of the seller.

RUGG, C. J.  This is a bill to reach and apply property of the
defendant Levy in the hands of the other defendant, Harry L.
Lurie.  At the trial it developed that the title to the property in
question had been transferred to Yetta Lurie and a motion by
the plaintiff to join her as a party defendant was allowed.*   Of
course this without more did not make her a party.  There is
nothing in the record to show that service was made upon her,
or that she ever appeared or filed an answer.  Further, it being
recited in the final decree that the goods sought to be reached and
applied have been sold at auction by one Guttentag, a constable
of the city of Boston, the decree proceeds, that in the event of
failure by the debtor defendant to pay the plaintiff's debt, "then
the said Joseph Guttentag, constable, is directed and ordered to
deliver unto the plaintiff from the proceeds of such sale and it is
ordered that the proceeds of such sale shall be applied by said
Joseph Guttentag" toward the payment of the plaintiff's claim.

All this was irregular.  The motion to join Yetta Lurie as a
party having been allowed on the ground that she had a real
interest in the goods, the plaintiff then, if she did not appear
voluntarily, ought to have caused her to be summoned to appear
in court and then to have moved to have the bill taken for
confessed if she failed to appear.  If the property or its proceeds
which the plaintiff wanted to reach was in the hands of Gutten-
tag, he also should have been joined as a party.  There is nothing
in the record to show his relation to the goods.  For aught that
appears, he may have attached the goods on a writ in favor of an
innocent creditor of Harry Lurie or Yetta Lurie.  No decree in
a case like the present can run against a stranger until he has
been made a party to the suit and is subject to the jurisdiction
of the court.

---

* The case was heard by *Wait*, J., on March 16, 1914.  He ordered a decree
on March 27 and filed a memorandum of findings on May 18, 1914.  On
July 30 the motion to join Yetta Lurie as a party defendant was filed "as
of March 16" and it was allowed on August 4.  The final decree was entered
on November 19.

The order for the final decree in conventional form simply states the conclusion of law that the conveyance was made to hinder, delay and defraud creditors, and, in order to understand and interpret it, resort must be had to the finding of facts made under R. L. c. 159, § 23. That finding, so far as material, is printed in a footnote.* It is not plain. A debtor at common law has a right to exhaust his property in the payment of one or more of his creditors in full, in preference to and to the exclusion of others. *Giddings* v. *Sears,* 115 Mass. 505. It is not necessary to determine whether a debtor may sell lawfully his property to a third person for a fair price, with a genuine purpose to apply the proceeds to the payment of some creditors in preference to others. *Clements* v. *Moore,* 6 Wall. 299. *Gregory Tilton & Co.* v. *Harrington,* 33 Vt. 241. *Priest* v. *Brown,* 100 Cal. 626. The finding is not explicit upon the point whether Kate Levy had an intent to do more than pay the debt due to her son in preference to her other creditors. The inadequacy of the consideration paid by Lurie, together with other circumstances, was evidence sufficient to warrant a finding of fraudulent purpose on her part. Nor does the finding go to the extent of saying that Lurie knew of or participated in an intent of Kate Levy to hinder, delay or defraud her creditors. If a transaction is "honest enough," it is somewhat difficult to regard it as a conscious part of an unlawful scheme to defraud the creditors of another. If, however, Lurie knew of

---

* "Kate Levy was doing a poor business and owed creditors she did not see her way to pay. She had a stock worth several hundred dollars.

"She had borrowed from her son and desired to repay him $225, so that he might get an engagement ring for his betrothed, and he was pressing for his money. To pay him, she arranged to borrow of her son-in-law, Lurie, who was willing to lend $250, but wanted security. After inquiry of a lawyer, he was informed he could lend, take a mortgage on her stock of goods, take possession immediately and foreclose at once if she did not pay. He loaned $250, to be repaid $25 per week, took the mortgage and possession, and then at the end of a week, when on demand she failed to pay the $25, gave the proper statutory notices and foreclosed, his wife buying in at the sale.

"This transaction was honest enough on Lurie's part, but he knew the situation and was really hindering and delaying the creditors of Mrs. Levy. I believe he paid over his own money and expected to be able to hold a valid mortgage, but the whole transaction was devised to enable Mrs. Levy to pay for her son's engagement ring. Lurie was unwilling to lend to the son, and was unwilling to lend without security."

all the facts, and knew that the defendant Levy intended to hinder, delay and defraud her other creditors in substance by selling all her property for considerably less than it was worth, and intended to aid in the execution of that intent, simply supposing that the device adopted was sufficient to circumvent all legal objections, then. he is not protected if the assumption turns out to have been wrong. In order to set aside a transfer made in fraud of creditors by the seller, the purchaser, if paying a valuable consideration, actually must know of or participate in the fraudulent purpose of the seller. *Wadsworth* v. *Williams,* 100 Mass. 126. *Pierce* v. *O'Brien,* 189 Mass. 58. *Gately* v. *Kappler,* 209 Mass. 426, 431.

But these points cannot be decided upon this record, for the reason that they affect the rights of Yetta Lurie and Guttentag, neither of whom have been made actual parties or been heard.

*Decree reversed.*

*M. H. Steuer,* for the defendants.
*W. Charak, (J. Robbins* with him,) for the plaintiff.