JOSEPH P. MANNING COMPANY *vs.* FRANK SHINOPOULOS & others.

Suffolk. May 8, 1944. — September 14, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, RONAN, & SPALDING, JJ.

*Fraudulent Conveyance. Equity Jurisdiction,* Fraudulent conveyance. *Words,* "Conveyance."

There was a fraudulent conveyance within G. L. (Ter. Ed.) c. 109A, §§ 1, 7, where a chattel mortgage was assigned, and the assignee was permitted to take possession of and sell the mortgaged goods, with actual intent of the mortgagor and the assignee to defraud the mortgagor's creditors, whether or not there was a foreclosure of the mortgage by the assignee; and the assignee in equity might properly be adjudged indebted to such a creditor in the amount of the creditor's claim, which was less than the value of the mortgaged goods and the sum for which they were sold by the assignee.

BILL IN EQUITY, filed in the Superior Court on January 20, 1942.

The suit was heard by *Donahue,* J.

*H. J. Booras & A. P. Senopoulos* for the defendant Peter Shinopoulos submitted a brief.

No argument nor brief for the plaintiff.

SPALDING, J. The plaintiff's bill as originally drawn alleges that the defendant Frank Shinopoulos is indebted to it in the amount of $340.40; that he mortgaged the assets of his drug store to the defendant Edelstein who in turn assigned the mortgage to the defendant Peter Shinopoulos; and that the mortgage and the assignment were without consideration and therefore fraudulent as to creditors. The bill sought to have the debt against Frank Shinopoulos established and the mortgage declared void. An amendment to the bill alleged that since the bill was filed the mortgage had been foreclosed pursuant to a fraudulent scheme between the defendants Frank and Peter Shinopoulos for the purpose of placing property owned by Frank beyond

the reach of his creditors and of hindering and delaying the plaintiff in obtaining payment of the amount due it.

. After a hearing a final decree was entered dismissing the bill as to the defendants Edelstein and Sheinfeld (the auctioneer) and adjudging that the defendants Frank and Peter Shinopoulos were severally indebted to the plaintiff in the sum of $340.40 and interest amounting to $13.60. From this decree the defendant Peter Shinopoulos, hereinafter referred to as the defendant, appealed. The evidence is not reported but the trial judge made a report of material facts pursuant to a request under G. L. (Ter. Ed.) c. 214, § 23.

The judge found these facts. On May 26, 1941, the defendant Frank Shinopoulos mortgaged the stock in trade and fixtures of a drug store owned and operated by him to the defendant Edelstein in consideration of $362 paid by her; the mortgage was given to secure a promissory note in that amount payable in fifty weekly instalments of $7 each and a final instalment of $12, the first instalment being due June 2, 1941. Frank Shinopoulos paid the weekly instalments as they came due down to and including the payment due on January 5, 1942. On January 12, before there was any default on the mortgage, Edelstein, the mortgagee, assigned the mortgage to Peter Shinopoulos (Frank's brother) and at the same time indorsed and delivered the mortgage note to him. At that time Frank was indebted to the plaintiff in the amount of $340.40, and owned no property other than that subject to the mortgage. The mortgaged property was then worth at least $700. There was evidence tending to show that Peter Shinopoulos foreclosed the mortgage a few days later and that he, the only bidder at the foreclosure sale, bid in the property for $200. The judge, however, found that no such sale ever took place, but that Peter without any actual foreclosure took ostensible possession of the property and caused it to be sold at auction on January 16, 1942, for $700.

The judge, after finding the facts recited above, concluded: "I find that there was a deliberate fraud participated in by the defendants Frank and Peter Shinopoulos, and that the

fraud was this: Frank being in debt and his drugstore being unsuccessful financially, he and Peter arranged that Peter should take an assignment of the Edelstein mortgage; that Frank thereupon would default on the mortgage, that Peter thereupon would·take title to the stock and merchandise worth more than $700 for the benefit of himself and Frank, and thus prevent any creditor from reaching Frank's equity of more than $500 in the mortgaged property."

The foregoing findings establish a proper case for equitable relief on the ground that the assignment of the mortgage to Peter was a fraudulent conveyance under G. L. (Ter. Ed.) c. 109A, § 7, which provides that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder,·delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." The judge found that the assignment of the mortgage was made with an actual intent on the part of Frank and Peter Shinopoulos to defraud creditors. It does not appear from the report what, if anything, Peter paid for the assignment of the mortgage, but that is of no consequence. Under the statute, as at common law, if the conveyance is made and received for the purpose of hindering, delaying or defrauding creditors it is fraudulent and can be set aside without regard to the nature or amount of consideration. *Wadsworth* v. *Williams,* 100 Mass. 126, 130–131. *Gately* v. *Kappler,* 209 Mass. 426, 431. *Cohen* v. *Levy,* 221 Mass. 336, 339. *Banca Italiana Di Sconto* v. *Bailey,* 260 Mass. 151, 160. *Merchants Discount Co.* v. *Esther Abelson, Inc.* 297 Mass. 517, 520. *Buckley* v. *John,* 314 Mass. 719, 726–727.

Causing the mortgage to be assigned to Peter and relinquishing the equity to him, as the defendant Frank Shinopoulos did here, is a "conveyance" as the word is defined in the uniform fraudulent conveyance law. G. L. (Ter. Ed.) c. 109A, § 1. See *Service Mortgage Corp.* v. *Welson,* 293 Mass. 410.

The defendant has argued that the decree was improper in adjudging that he is indebted to the plaintiff in the amount stated because neither the allegations of the bill nor the find-

ings of the trial judge state that he owed the plaintiff anything. We think, in the circumstances here disclosed, that the decree was not improper in that respect. The judge found that the defendant took possession of the mortgaged property and sold it for $700. Since the assignment, as stated above, was fraudulent as to the plaintiff, and Peter, who participated in the fraud, was not a "purchaser" "without knowledge," the plaintiff is entitled under G. L. (Ter. Ed.) c. 109A, § 9, to have the assignment "set aside . . . to the extent necessary to satisfy . . . [its] claim." The defendant has in his possession the proceeds of property fraudulently conveyed to him in an amount sufficient to satisfy the plaintiff's claim. The case at bar in this respect is governed by the recent case of *Buckley* v. *John*, 314 Mass. 719, which held that the grantee of a fraudulent conveyance who participated in the fraud can be required to pay the claim of a creditor of his grantor out of the property in his hands fraudulently acquired. It was said in that case, at page 727, "With the release out of the way, the judgment of Pandeli John against Demetri John is regarded in equity as still remaining in force for the purpose of satisfying the plaintiff's claim against Pandeli John, and can be reached and applied in a simple manner by requiring Demetri John to pay it to the plaintiff to the extent of the plaintiff's claim. It is not important in this case whether in theory this is deemed to be accomplished through the medium of G. L. (Ter. Ed.) c. 214, § 3 (7), relative to suits to reach and apply property which cannot be attached or taken on execution in an action at law . . . or whether the uniform fraudulent conveyance law is so construed as in itself to authorize by implication the use of all equity powers necessary to the final satisfaction of the creditor's claim. . . . In any event, the plaintiff is entitled to an effective remedy in equity."

Finally, the defendant contends that the judge was in error in finding that there was no foreclosure inasmuch as it is admitted in the pleadings that there was. In the view that we take of the case this is not material. Since the defendant took possession of and sold the property in furtherance of a fraudulent scheme, the plaintiff is entitled

to recover regardless of whether or not there was a foreclosure.

The relief granted, however, was not within the scope of the plaintiff's bill. The original bill sought relief on the ground that the mortgage was void as against the plaintiff because it was without consideration (see G. L. [Ter. Ed.] c. 109A, § 4) and not on the ground that the conveyance was made with actual intent to defraud under G. L. (Ter. Ed.) c. 109A, § 7. The amendment added a paragraph to the effect that the foreclosure was made with intent to defraud. Neither the bill nor the amendment, we think, goes far enough to make out a case under § 7. But where it appears that the issues upon which the final decree is based have been fully heard and a clear case for relief under this section has been established, an amendment may well be allowed. The plaintiff is given leave, if so advised, within thirty days to apply to the Superior Court for appropriate amendments to its bill so that it may conform to the proof; if such amendments are allowed, then the final decree is to be affirmed with costs. Otherwise the decree is to be reversed and a new decree is to be entered, dismissing the bill with costs. G. L. (Ter. Ed.) c. 231, §§ 51, 125, 144. *Seder* v. *Kozlowski,* 304 Mass. 367, 370. *Tompkins* v. *Sullivan,* 313 Mass. 459, 461, 463–464.

*So ordered.*