Bruce P. COMJEAN, Appellant,

v.

Gary W. CRUICKSHANK,
Trustee, Appellee.

Civ. A. No. 93–12697–JLT.

United States District Court,
D. Massachusetts.

Nov. 30, 1995.

John E. Sutherland, Brickley, Sears & Sorett, Boston, MA, for Bruce P. Comjean, Appellant.

Henry J. Boroff, Trustee, Boroff & Associates, Boston, MA, pro se.

Jeffrey J. Cymrot, Jay F. Theise & Associates, Boston, MA, for Gary W. Cruickshank, Trustee.

---

## MEMORANDUM

TAURO, Chief Judge.

Bruce P. Comjean ("Comjean") appeals from the bankruptcy court's judgment for the Trustee of his bankruptcy estate (the "Trustee"), which avoided the transfer of his interests in certain property to his wife.

## I.

## BACKGROUND

In 1971, Comjean and his wife, Marlies I. Comjean ("Marlies"), purchased their residence in Lincoln, Massachusetts (the "Lincoln residence") as tenants by the entirety. In 1986, Marlies borrowed approximately $99,000 from her aunt to pay off two mortgages that encumbered the Lincoln residence.

During the same period that Marlies paid off the mortgages on the home, financial difficulties beset Comjean. In June 1987, the Internal Revenue Service (the "I.R.S.")

levied on Comjean's interest in the Lincoln residence for approximately $278,000. In August 1988, the I.R.S. seized the Lincoln residence and sold Comjean's interest at auction to Judith Hiller for $15,100.

Under 26 U.S.C.A. § 6337 (West 1989), any person having an interest in the property purchased through a tax sale may exercise within 180 days of such sale their right to redeem the property by paying to the purchaser the amount paid plus interest. The parties stipulated that Comjean's ownership of the Lincoln residence as a tenant by the entirety remained unaffected by the tax sale until the period of redemption passed.

On March 9, 1989, Marlies borrowed approximately $16,500 from her aunt and redeemed the property from Hiller. There is no evidence to indicate that Hiller was an insider acting on behalf of Comjean and Marlies. As a consequence of the redemption, title to the land lay where it would have been had no tax sale taken place, except that Marlies now held an equitable lien for $16,500 against Comjean's interest in the Lincoln residence.[1] Thus, on March 9, 1989, Comjean held a tenancy by the entirety in the Lincoln residence subject to Marlies' equitable lien and the balance of the I.R.S.'s tax lien. On the same day that Marlies exercised the redemption, Comjean signed a quit-claim deed to Marlies, giving to her all right to his interest in the Lincoln residence in exchange for "$1 and other valuable consideration."

Comjean filed a voluntary Chapter 7 petition for bankruptcy on May 14, 1992. The bankruptcy court appointed Henry J. Boroff, who was later succeeded by Gary W. Cruickshank, as the trustee in the matter.

In October 1992, the Trustee filed an adversary proceeding against Comjean and Marlies, seeking avoidance of the quit-claim transfer under 26 U.S.C.A. § 544(b) (West 1993). Section 544(b) permits the Trustee to

---

1. The parties stipulated to this proposition in the bankruptcy court proceeding. The position is supported by *Samet v. United States*, 242 F.Supp. 214, 222–23 (M.D.N.C.1965). On appeal, Comjean attempts to retract this stipulation, contending that the effect of the redemption was that Marlies takes the entire interest in the property

subject to prior existing liens of creditors and the I.R.S. Nonetheless, having stipulated to the contrary in the bankruptcy court, Comjean cannot now modify his position. *See Harvis v. Roadway Exp. Inc.*, 923 F.2d 59, 60 (6th Cir.1991) (party may not complain of error that he invited).

avoid transfers of the debtor's interests that are voidable under state law. The Trustee alleged that the transfer was voidable under M.G.L. c. 109A §§ 4, 5, 6, and 7.[2]

The bankruptcy court entered judgment for Comjean and Marlies on the counts relating to M.G.L. c. 109A §§ 4, 5, and 6. In entering judgment on these counts, the bankruptcy court found that the Trustee failed to submit sufficient evidence of the value of Comjean's interest for it to assess whether Marlies paid fair consideration.

With respect to the count concerning section 7, the bankruptcy court found (1) that "a plan of redemption [was] engineered by [Comjean] to convey his interest to his wife so that his numerous creditors could not assert claims against his interest in the property," and (2) that numerous badges of fraud supported the conclusion that Comjean had the actual intent of hindering, delaying, or defrauding his creditors in devising the transfer. Accordingly, the bankruptcy court entered judgment for the Trustee. Comjean appeals.[3]

## II.

## ANALYSIS

A. *Standing*

■ Before addressing the merits, the Trustee presents a threshold issue concerning the propriety of this appeal. The Trustee maintains that Comjean lacks standing.

■ The standing of nonparties to appeal from orders of the bankruptcy court is governed by the "aggrieved persons" rule. *In re Thompson*, 965 F.2d 1136, 1142 n. 9 (1st Cir.1992). Only persons whose rights or interests are "directly and adversely affected pecuniarily" by a bankruptcy court order may appeal. *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987). Because debtors are generally unaffected by determinations regarding the disposition of the bankruptcy estate, they are not generally aggrieved persons. *Id.* at 155. Neither of the two exceptions to this rule—(1) where a favorable ruling would result in a surplus to the bankruptcy estate that would inure to the debtor and (2) where the ruling affects the dischargeability of a debt, *Id.* at 155 n. 6.—apply in this case. Hence, if Comjean had not been named as a party-defendant in the adversary proceeding, it is clear that he could not bring this appeal. *See In re Eisen*, 31 F.3d 1447, 1451 n. 2 (9th Cir.1994) (debtor who was not party in the adversary proceeding had no standing to appeal).

Nonetheless, unlike the cases upon which the Trustee relies, Comjean does not stand solely in the shoes of a debtor to a bankruptcy proceeding, for the Trustee named him as a party-defendant in the adversary proceeding. Applying the aggrieved person rule as a bar to Comjean's appeal would have the effect of depriving a named party, who fully participated in defending the case below, an opportunity to appeal from an adverse judgment.

---

2. M.G.L. c. 109A provides:
  § 4. Conveyances by insolvent. Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred *without a fair consideration.*
  § 5. Conveyances by persons engaged in or about to engage in business. Every conveyance made *without fair consideration* when the person making it is engaged or is about to engage in a business or transaction, for which the property remaining is an unreasonably small capital, if fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent.
  § 6. Conveyances by person about to incur debts beyond ability to pay. Every conveyance

made and every obligation incurred *without fair consideration* when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature is fraudulent as to both present and future creditors.
  § 7. Conveyances made with intent to defraud. Every conveyance made and every obligation incurred' with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors.
  (emphasis added).

3. Marlies is not a party to this appeal. She neither filed a notice of appeal, nor was named as an appellant in the notice filed by Comjean.

Though there are no cases directly addressing this issue, federal circuit courts have recognized the appeals of debtor-defendants from adversary proceedings brought by a trustee of the bankruptcy estate against the debtor. For example, the First Circuit addressed the merits of an appeal brought by a debtor-defendant from a bankruptcy court judgment in an action by the trustee to set aside a fraudulent conveyance. *Whitlock v. Hause*, 694 F.2d 861 (1st Cir.1982). Similarly, the Seventh, Eleventh and Fifth Circuits have addressed the merits of claims brought by a debtor-defendant on appeal. *In re Delagrange*, 820 F.2d 229 (7th Cir.1987); *In re Graham*, 747 F.2d 1383 (11th Cir.1984); *Milstid v. Pennington*, 268 F.2d 384 (5th Cir.1959). Because the transferee of the conveyance joined the debtor in the appeal, these courts could have reached the merits regardless of the debtor's standing. Nonetheless, though these cases do not foreclose the Trustee's position, it is significant that the courts were untroubled by the debtor-defendant's presence as an appellant.

■ The aggrieved person rule stems from the distinction between a typical civil case and a bankruptcy proceeding. As commentators have explained:

> In a typical civil case, there is a plaintiff and a defendant, one of which loses at the trial level. It is therefore unnecessary to set strict standards regarding standing on appeal, since the person appealing is the party to the action lost below. On the other hand, bankruptcy litigation many times involves and affects the interest of parties who are not formally parties to the litigation.

1 Collier on Bankruptcy ¶ 3.03[5], 3–180 (15th ed. 1995). Because bankruptcy litigation affects the interests of myriad persons who are not formally parties to the litigation, some limit must be imposed on the ability of those nominally interested persons to prolong resolution of the litigation. *In re El San Juan Hotel*, 809 F.2d at 154. The aggrieved person rule insures "that bankruptcy proceedings are not unreasonably delayed by protracted litigation" of those nominal parties. *Id.*

In contrast to the normal posture of a debtor as a nominal party in the bankruptcy proceeding, Comjean stands as a defendant in the adversary proceeding. Even though the adversary proceeding is conducted within the framework of the bankruptcy, it bears the marks of a typical civil trial. *Cf. Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 48–50, 109 S.Ct. 2782, 2793–95, 106 L.Ed.2d 26 (1989) (fraudulent conveyance action is legal in nature). Imposing the pecuniary loss requirement in this context would paradoxically imply that a party against whom a judgment is entered is not aggrieved by that judgment. Moreover, permitting Comjean to appeal does not undermine the policies giving rise to the aggrieved person rule. Because the number of named parties in an adversary proceeding is limited, allowing those named parties to bring appeals from adverse judgments does not open the floodgates to bankruptcy appeals.

A final consideration also augurs in favor of permitting Comjean's appeal. Because the Trustee could have proceeded solely against Marlies, he need not have named Comjean as a defendant in the adversary proceeding. *Cf. Desmond v. Moffie*, 375 F.2d 742 (1st Cir.1967) (noting that trustee sought to invalidate conveyance by bringing adversary proceeding solely against spouse of debtor). *See also In re Janz*, 140 B.R. 256 (Bankr.D.N.D.1991) (avoidance action brought only against transferee), *aff'd*, 980 F.2d 734 (8th Cir.1992); *In re Lyons*, 130 B.R. 272 (Bankr.N.D.Ill.1991) (same); *In re Sanders*, 128 B.R. 963 (Bankr.W.D.La.1991) (same). The Trustee should not garner whatever benefits stem from Comjean's presence as a party-defendant in the adversary proceeding while, at the same time, seek to deny Comjean the opportunity to appeal.

In light of all these considerations, the court concludes that Comjean has standing to bring this appeal.

B. *The Merits*

■ A district court reviews *de novo* the bankruptcy court's conclusions of law, whereas findings of facts are reviewed for clear error. *In re First Software Corp.*, 107 B.R. 417, 420 (D.Mass.1989). Comjean contends

that the bankruptcy court erred in three respects.

1. *Proof of the absence of fair consideration is not necessary to establish a fraudulent conveyance under section 7*

■ The first issue raised by Comjean relates to the failure of the Trustee to establish the value of Comjean's interest in the Lincoln property and, thereby, to establish the absence of fair consideration. Comjean contends that the bankruptcy court erred in holding that the Trustee did not need to show the absence of fair consideration to establish a section 7 violation.[4]

In advancing this contention, Comjean simply misstates Massachusetts law. In *Joseph P. Manning Co. v. Shinopoulos*, 317 Mass. 97, 99, 56 N.E.2d 869, 870 (1944), the Supreme Judicial Court of Massachusetts concluded that "if the conveyance is made and received, for the purpose of hindering, delaying or defrauding creditors it is fraudulent and can be set aside without regard to the nature or amount of consideration." Comjean has *not* identified any Massachusetts case abrogating the holding of *Shinopoulous*. Accordingly, the bankruptcy court did not err in finding actual fraud despite the Trustee's failure to show the absence of fair consideration.

2. *Fraudulent intent of the transferee is an element of a fraudulent conveyance action under section 7*

■ In finding for the Trustee on the section 7 claim, the bankruptcy court stated that "courts look exclusively to the transferor's intent and motivation and not to the transferee's intent." Comjean contends that, in holding that Marlies' intent was irrelevant, the bankruptcy court erred.

Prior to Massachusetts' adoption of the Uniform Fraudulent Conveyance Act ("the UFCA") in 1924, Massachusetts common law governed fraudulent conveyance actions. *See Boston Trading Group, Inc. v. Burnazos,*

835 F.2d 1504, 1505–06 (1st Cir.1987). Under the common law analogue to section 7, the Supreme Judicial Court of Massachusetts held that, where there is consideration involved in the purchase, the plaintiff must show that the transferee has knowledge of or participated in the fraudulent purpose of the seller. *Cohen v. Levy*, 221 Mass. 336, 339, 108 N.E. 1074, 1075 (1915). Subsequently, the Supreme Judicial Court applied the *Cohen* rule to section 7. *Merchants Discount Co. v. Esther Abelson, Inc.*, 297 Mass. 517, 519, 9 N.E.2d 528, 530 (1937).

In contending that the transferee's intent is not relevant, the Trustee fails to point the court to any Massachusetts cases undermining the continued vitality of *Merchants Discount*. Rather, the Trustee relies on recent cases from other jurisdictions holding that the transferee's intent is not relevant in a section 7 action under the UFCA. *Crowthers McCall Pattern, Inc. v. Lewis* 129 B.R. 992, 999 (S.D.N.Y.1991) (applying New York law); *In re Otis & Edwards, P.C.*, 115 B.R. 900, 913 (Bankr.E.D.Mich.1990) (applying Michigan law). The Trustee overlooks, however, numerous modern cases from other jurisdictions that essentially follow the rule articulated in *Cohen* and *Merchants Discount*. *See, e.g., Scholes v. African Enterprise, Inc.*, 854 F.Supp. 1315, 1324 n. 2 (N.D.Ill.1994), *aff'd sub nom. Scholes v. Lehmann*, 56 F.3d 750 (7th Cir.1995), *cert denied*, —— U.S. ——, 116 S.Ct. 673, 133 L.Ed.2d 522 (1995); *Printed Media Services v. Solna Web, Inc.*, 838 F.Supp. 1453, 1457 (D.Kan.1993). In light of this conflicting authority, the court is unpersuaded by the Trustee's suggestion that *Merchants Discount* no longer controls. Accordingly, the bankruptcy court erred in concluding that Marlies' intent was not relevant.

Alternatively, the Trustee argues that the court can uphold the bankruptcy court's judgment on the ground that the bankruptcy court in fact found that Marlies knew of or participated in Comjean's fraudulent purpose. The Trustee relies on the following

---

4. Though it is not apparent from the record on appeal that Comjean raised this issue in the bankruptcy court, the Trustee does not contend that Comjean waived this issue. *See Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1425

(7th Cir.1992) (appellee waived right to rely on appellant's waiver of a certain claim where appellee did not raise appellant's waiver of issue in appellee's appeal brief).

language from the bankruptcy court's findings:

> Looking at the transaction at [sic] a whole, I believe that a plan existed for Mrs. Comjean to obtain the property free of any claims of her husband's creditors. Regardless of her motivation, the effect of the transfer was really only one thing and that was to hinder, delay, and defraud the debtor's creditors while ensuring that he and his family retained control over the property for the present and future. The—the only explanation that I find is—is that the debtor and his wife wanted to save the house from Mr. Comjean's problems.

The finding that Marlies "wanted to save the house" is not, however, sufficient by itself for this court to conclude that the bankruptcy court found that Marlies knew of or participated in Comjean's fraudulent purpose. Moreover, because the parties failed to include the testimony given before the bankruptcy court in the record on appeal, the court cannot conclude that the bankruptcy court's error was harmless.

Accordingly, because the court concludes that the bankruptcy court erred in holding that Marlies' state of mind was irrelevant to whether the conveyance of the Lincoln residence was avoidable under section 7, the case must be remanded to the bankruptcy court for it to determine whether Marlies knew of or participated in Comjean's fraudulent purpose.

### 3. The bankruptcy court failed to find that the conveyance placed assets beyond the reach of his creditors

█ Although the judgment must be vacated, the court will proceed to the third issue raised by Comjean in order that the bankruptcy court may resolve all outstanding issues on remand. Comjean contends that to establish a section 7 violation, the Trustee must demonstrate that assets have been placed beyond the reach of creditors. From this legal premise, he maintains that the bankruptcy court erred because the transfer to Marlies did not place assets beyond the

reach of creditors insofar as any interest he had was burdened by I.R.S. liens that far exceeded the value of the interest conveyed to Marlies.

█ Comjean correctly notes that "[a] conveyance is not established as a fraudulent conveyance upon showing of a fraudulent intention alone; there must also be a resulting diminution in the assets of the debtor available to creditors." *Richman v. Leiser,* 18 Mass.App.Ct. 308, 312, 465 N.E.2d 796, 798 (1984). Nonetheless, the consequence of applying this rule in this case is unclear.

The bankruptcy court found that "[s]everal actual creditors existed at the time of the transfer, the I.R.S. and several judgment creditors," and that Comjean engineered a plan of redemption "to convey his interest to his wife so that his numerous creditors could not assert claims against his interest in the property." On one reading, the bankruptcy court findings suggest that the I.R.S. was a creditor frustrated by the transfer of Comjean's interest in the Lincoln residence to Marlies. The problem with such a reading is that, unless the I.R.S. liens were extinguished by the tax sale, those liens presumably attached to Comjean's interest in the Lincoln residence after Marlies exercised the redemption and ran with the conveyance of Comjean's interest to Marlies. As such, the transfer does not appear to prevent the I.R.S. from asserting its claims against the asset.

The court has found nothing in the record to clarify these issues.[5] In light of the paucity of the record, the court concludes that remand for further findings is appropriate. On remand, the bankruptcy court is instructed to determine (1) whether the I.R.S. liens survived the tax sale, (2) whether, assuming survival of the liens, the I.R.S.'s claims against Comjean's interest in the Lincoln residence ran with the transfer to Marlies, and (3) whether the transfer resulted in a diminution of Comjean's assets that would

---

5. Again, while it does not appear that Comjean raised this issue before the bankruptcy court, the Trustee does not contend that Comjean has waived this issue. Indeed, the Trustee fails to address the merits of this issue in his brief.

have been available to creditors other than the I.R.S.[6]

### CONCLUSION

For the reasons discussed above, the bankruptcy court's judgment is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

An order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, the court hereby VACATES the judgment of the bankruptcy court and REMANDS for further proceedings.

IT IS SO ORDERED.

---

**6.** The court in *In re MacDonald* confronted a similar issue in the context of an adverse proceeding concerning dischargeability under 11 U.S.C. § 727(a)(2). 50 B.R. 255, 258–60 (Bankr. D.Mass.1984). The debtor in *MacDonald* transferred his interest in a residence as a tenant by the entirety, which was subject to I.R.S. liens, to his wife. *Id.* The court found that the value of the debtor's interest equalled one-half of the market value of the house. The court then deducted the amount of the I.R.S liens to determine whether anything remained of the debtor's interest for satisfaction of the claims of other debtors. *Id.*